**Glenda DeBORD, Plaintiff**

v.

**WASHINGTON COUNTY SCHOOL BOARD, Defendant**

No. 1:03CV00079.

United States District Court,
W.D. Virginia,
Abingdon Division.

Oct. 13, 2004.

Deborah Wood Dobbins, Gilmer, Sadler, Ingram, Sutherland & Hutton, Pulaski, VA, for Plaintiff.

George Walter Bressler, Bressler Curcio and Stout, Bristol, VA, for Defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior, District Judge.

This action, involving alleged violations of the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. § 621 *et seq.*, comes before the court on Defendant's Motion for Summary Judgment, (the "Motion for Summary Judgment"). Plaintiff, Glenda DeBord, ("DeBord"), alleges discrimination by the Washington County School Board, ("School Board"), in violation of the ADEA. DeBord claims that the School Board terminated her employment due to her age. The issues have been fully briefed by the parties, and oral argument was held on September 23, 2004. Therefore, the Motion is ripe for decision.

In rendering its decision, the court has considered excerpts from affidavits by: James Rector, Alan T. Lee, Elizabeth Lowe, Betty L. Deifenderfer, and Glenda Debord; and depositions by: Bill Brooks, George Stainback, Steve Clear, Glenda DeBord, Kevin Downs, Kathryn Roark, James Wallace, James Bishop, William "Buckey" Boone, and Nancy Morgan, all of which were submitted by the parties.

## I. Factual Background

DeBord was born on February 12, 1947, and was 53 years old at the time of her termination. (DeBord Affidavit at 1.) DeBord worked for the School Board from 1965 until February 4, 2000. (DeBord Affidavit at 1.) DeBord held the position of deputy clerk and secretary to the superintendent of schools from 1969 until her termination. (DeBord Affidavit at 1.) DeBord filed a Motion for Judgment in the Circuit Court of the County of Washington on July 2, 2003, which alleged that unlaw-ful discriminatory practices relating to DeBord's age, in violation of the ADEA, occurred when DeBord was discharged from her job. (Plaintiff's Motion for Judgment ("Motion for Judgment") at 3–5.) The School Board contends DeBord was terminated from her job due to an "attitude problem." (Motion for Summary Judgment at 2.)

During her 35–year–long employment by the Washington County School Board, DeBord worked for seven different superintendents and two acting superintendents, and received only positive performance evaluations. (Plaintiff's Response to Defendant's Motion for Summary Judgment ("Plaintiff's Response") at 2; DeBord Affidavit at 1, 10.) While DeBord continuously performed her administrative duties at an adequate level, her personal relationship with Dr. Alan Lee ("Lee"), the superintendent at the time of DeBord's termination and the person who recommended her termination, deteriorated to the point where it was cited as the reason for her termination. (Lee Affidavit at 4–5.)

Lee took over as superintendent of the Washington County schools on July 1, 1999. (Lee Affidavit at 1.) When Lee was hired, Dr. George Stainback, the superintendent who Lee was replacing, told Lee that if he would have stayed on as superintendent, he would not have kept DeBord as his secretary. (Lee Affidavit at 1; Stainback Deposition at 9–10.) Lee did not terminate DeBord, but kept her on in her capacity as his secretary. (Lee Affidavit at 1.)

In November 1999, some School Board members and administrators went to Williamsburg, Virginia for an annual conference. (Clear Deposition at 17.) In the past, DeBord usually made those travel arrangements, but since she had been out of the office tending to her sick brother, Lee assigned the travel duties to Steve

Clear. (Deifenderfer Affidavit at 1–2.) When DeBord found out that Clear made the travel arrangements, she was upset and confronted Lee in the presence of receptionist Betty Deifenderfer.[1] (Deifenderfer Affidavit at 1–2.) Lee explained that he assigned the travel arrangements to Clear since DeBord was out of the office, and DeBord responded by saying that, "[i]f that's the way you're going to go about eliminating my position, you should have waited until I came back." (Deifenderfer Affidavit at 1–2.)

Lee subsequently determined that his working relationship with DeBord had deteriorated to the point that it could not be repaired, and on January 4, 2000, he told DeBord that he was going to recommend that the School Board terminate her position and that he hoped to reassign her. (Lee Affidavit at 4–5; DeBord Deposition at 15.) At the School Board meeting on January 6, 2000, Lee recommended that the Board terminate DeBord's contract due to a communication problem between he and DeBord. (Lee Affidavit at 5.) Lee was not able to speak with DeBord until January 13, 2000, due to the death of DeBord's brother on January 6, 2000. (Lee Affidavit at 5–6.) When she returned, Lee tried to get her to talk with him, and she refused. (Lee Affidavit at 6.) Lee then attempted to give her a letter regarding her termination, which DeBord returned a few minutes later, unopened. (Lee Affidavit at 6.) Lee then later gave DeBord a letter which terminated her employment and did not provide for her reassignment to another position. (Lee Affidavit at 6.) An advertisement was placed in newspapers for a replacement for DeBord, and Nancy Morgan, 46 years old, was hired at the same rate of pay. (Rector Affidavit at 2.) Because DeBord believed her termination was motivated by discriminatory reasons, she filed a lawsuit in the Circuit Court of Washington County on July 2, 2003. (Motion for Judgment at 1.) The School Board removed the case to federal district court on July 14, 2003.

## II. Standard of Review

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact ...." FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court must consider the factual evidence and all inferences to be drawn therefrom. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The evidence is construed in the light most favorable to the nonmoving party, and the court must draw all reasonable inferences in her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court may not make credibility determinations or weigh the evidence, and the court must disregard all evidence favorable to the moving party that it is not required to believe. Reeves, 530 U.S. at 150–51, 120 S.Ct. 2097. Thus, if there is no genuine issue of material fact, summary judgment is appropriate. The standards for summary judgment apply equally in discrimination cases, even where the motive of intent of the defendant is at issue. See Henson v. Liggett Group, Inc., 61 F.3d 270, 278 (4th Cir. 1995).

## III. Analysis

The ADEA makes it unlawful for an employer to "discharge any individual or

---

1. At the time of the incident, Betty Deifenderfer was not married. Her maiden name was Betty Rasnake. (Deifenderfer Affidavit at 1.)

otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a)(1) (2004). If the plaintiff does not have any direct evidence of age discrimination, she may establish a claim for intentional age discrimination through two avenues of proof, thereby avoiding summary judgment. The first avenue is known as the "mixed-motive" method, where the plaintiff shows evidence demonstrating that age bias motivated the employment decision; the second avenue is the "pretext" method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and its progeny. *See Mereish v. Walker*, 359 F.3d 330, 334 (4th Cir.2004).

Plaintiff is advancing her age discrimination claim under the pretextual scheme. Under the *McDonnell Douglas* framework, as applied to the pretextual scheme for age discrimination claims in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), plaintiff must first establish a prima facie case of discrimination. *Reeves*, 530 U.S. at 142, 120 S.Ct. 2097. The *McDonnell Douglas* framework then creates an inference of discrimination on the part of the defendant. *Price v. Thompson*, 380 F.3d 209, 212–13 (4th Cir.2004). The burden then shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its adverse employment action with respect to plaintiff. *Price*, 380 F.3d at 212. If the defendant meets this burden, "the plaintiff then must show that the employer's proffered reasons are pretextual or his claim will fail." *Price*, 380 F.3d at 212.

■ The prima facie elements of an age discrimination claim are: (1) plaintiff is in a protected class; (2) an adverse employment action was taken against plaintiff; (3) plaintiff was performing her job at a level that met the employer's expectations; and (4) plaintiff's employer did not treat the protected status neutrally, or there were other circumstances giving rise to an inference of discrimination. *See Dugan v. Albemarle County Sch. Bd.*, 293 F.3d 716, 721 (4th Cir.2002). "[T]he fourth element is satisfied with proof of replacement by a substantially younger worker—not proof of replacement by someone entirely outside the ADEA's protected class." *Dugan*, 293 F.3d at 721 (citing *Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 430 (4th Cir.2000) ("[G]iven that the discrimination prohibited by the ADEA is discrimination because of an individual's age, not because of the individual's membership in a protected class, the fact that one person in the protected class has lost out to another person not in the protected class is irrelevant. The relevant question is whether the person in the protected class has lost out because of his age.")).

In the case at bar, the first two elements of the prima facie case are unquestionably met. DeBord, being 53 years old at the time of her termination, is a member of the protected class, and an adverse employment action, in the form of her termination, was taken against her. (DeBord Affidavit at 1); *see Dugan*, 293 F.3d at 721. The third element of DeBord's claim is the subject of debate between the parties. *See* Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment at 6–7. However, viewing the evidence in the light most favorable to DeBord, the third element of the claim has been met considering DeBord has offered evidence that she never received a negative performance evaluation. (DeBord Affidavit at 2.)

■ The fourth element of the prima facie case was examined in *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433

(1996), when the Supreme Court held that "the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the *McDonnell Douglas* prima facie case." *O'Connor,* 517 U.S. at 312, 116 S.Ct. 1307. Rather, the Supreme Court held that the purpose of the fourth prong is to require the plaintiff to prove in their prima facie case " 'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion ....' " *O'Connor,* 517 U.S. at 312, 116 S.Ct. 1307 (quoting *Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). The test became whether plaintiff was replaced by a person who was "substantially younger than the plaintiff," since the "substantially younger" test is a more reliable indicator of age discrimination than merely evaluating whether the person who replaced plaintiff was a member of the ADEA's protected class. *See O'Connor,* 517 U.S. at 313, 116 S.Ct. 1307. Thus, the greater the age disparity between a replacement and a terminated employee, the stronger the inference of discrimination.

The Fourth Circuit interpreted *O'Connor* in *Stokes v. Westinghouse Savannah River Co.,* 206 F.3d 420 (4th Cir.2000). There, the court held that, in light of *O'Connor,* the requirements for stating a prima facie case of age discrimination were modified, and in the context of a reduction in force where performance is the announced basis for selection, the plaintiff must show that "the process of selection produced a residual work force including some persons in the group who were substantially younger than him and who were performing at a level lower than that at which he was performing." *Stokes,* 206 F.3d at 430.

In applying the "substantially younger" standard, other circuits have generally held that age differences of 10 or more years are sufficiently substantial to meet the requirement of the fourth prong of the prima facie case. *See Grosjean v. First Energy Corp.,* 349 F.3d 332, 336–38 (6th Cir.2003) (listing many cases from different courts holding that age differences of more than 10 years are substantial). Other circuits also have held that age differences of less than 10 years are normally not substantial enough to meet the requirement of the fourth prong of the prima facie case. *Grosjean,* 349 F.3d at 338–39 (listing many cases from different courts holding that age differences of less than 10 years are not substantial).

The courts of this circuit, including the Fourth Circuit Court of Appeals, have for the most part followed these principles. In *Mosher v. Washington Gas Light Co.,* 18 Fed.Appx. 141, 2001 WL 1032428 (4th Cir.2001) (unpublished), the court found that a 51–year–old worker who was replaced by a 21–year–old worker stated a prima facie case for age discrimination. *Mosher,* 18 Fed.Appx. at 145, 2001 WL 1032428 at *4. Likewise, in *Rishel v. Nationwide Mutual Ins. Co.,* 297 F.Supp.2d 854 (M.D.N.C.2003), the court held that an age difference of 25 years was sufficient to establish a prima facie case for age discrimination. *Rishel,* 297 F.Supp.2d at 869. Also, in *Rhymer v. Yokohama Tire Corp.,* 106 F.3d 391, 1997 WL 14143 (4th Cir. 1997) (unpublished), the replacement of a 54–year–old by a 41–year–old was held sufficient. *Rhymer,* 106 F.3d 391, 1997 WL 14143 at *3. Further, in *Tolley v. Health Care and Retirement Corp., Inc.,* 133 F.3d 917, 1998 WL 24972 (4th Cir. 1998) (unpublished), a worker who was 42 years old was held to be substantially younger than a worker that replaced a plaintiff who was 51–years–old, but the case was ultimately dismissed due to the plaintiff not proving in her prima facie case that she suffered an adverse employment action. *Tolley,* 133 F.3d 917, 1998

WL 24972 at *3. In *Jeffers v. Thompson*, 264 F.Supp.2d 314 (D.Md.2003), the court evaluated an age discrimination claim and held that a worker who was eleven years younger than the plaintiff met the "substantially younger" standard, but a worker who was five years younger did not. *Jeffers*, 264 F.Supp.2d at 328.

Finally, in *Kess v. Municipal Employees Credit Union of Baltimore, Inc.*, 319 F.Supp.2d 637 (D.Md.2004), the plaintiff, who was 50 years old at the time of her termination, was replaced by a worker who was 42 years old. *Kess*, 319 F.Supp.2d at 648. The court found that "[i]t is not clear whether the age gap of eight years between the two employees is sufficient, in itself, to meet the 'substantially younger' standard." *Kess*, 319 F.Supp.2d at 648. However, the court nonetheless held that the plaintiff "failed to carry her ultimate burden of establishing a reasonable inference of impermissible age discrimination" since the fact that she was terminated shortly after she was hired by the same people who hired her created a strong inference against discrimination, especially when viewed in light of the plaintiff only offering weak evidence to satisfy the requirement of evidence adequate to create an inference that the employment decision was based on an illegal discriminatory criterion. *Kess*, 319 F.Supp.2d at 648–49; *see O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).

█ The case at bar is analogous to *Kess*. DeBord was replaced by a worker who was seven years younger than she, and who was also in the protected class. DeBord has offered only weak evidence that would create an inference that her termination was based on an illegal discriminatory criterion. DeBord's evidence primarily consists of alleged inconsistencies in testimony given by witnesses in the case as to the reasons for her termination and her positive performance evaluations.[2] She does not present any evidence of discrimination. Further, as a result of this lawsuit, defendant conducted a review of its records to determine the age of its workforce and determined that 71 percent of its workforce is a member of the protected class. In cases like this, the plaintiff is basically relying on inferences to prove her case, and *O'Connor* recognized that this resulted in some cases being built on "very thin evidence." *O'Connor*, 517 U.S. at 312, 116 S.Ct. 1307. As the Seventh Circuit stated in *Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887 (7th Cir.1997), "[t]he Supreme Court's 'proper solution to the problem' of thin-evidence cases was to determine that no inference of discrimination could be drawn from the replacement of one worker with another worker insignificantly younger." *Hartley*, 124 F.3d at 893. Thus, while the seven-year age difference between DeBord and her replacement is not wholly insignificant, when viewed in light of the lack of evidence which would create the required inference

**2.** DeBord also cited remarks allegedly made by Jim Rector, then Director of Personnel, where he advocated replacing older women in the office where DeBord worked with younger women "like Monica Lewinsky." (DeBord Affidavit at 7.) While these remarks are reprehensible, Rector was not the individual who obtained the termination of DeBord. On January 6, 2000, Lee recommended that the School Board terminate DeBord's contract. At the time, the School Board was composed of James Wallace, Kathryn Roark, Elizabeth Lowe, Jim Bishop, Bucky Boone, Bill Brooks, and Kevin Downs. Motion for Summary Judgment at 9. The School Board voted to terminate DeBord's contract that day. (Lee Affidavit at 5.) Rector was not a decision-maker with respect to DeBord's termination, and, thus, his remarks do not comprise evidence that DeBord was terminated for reasons having to do with her age.

that the termination was based on age discrimination, this court must conclude that DeBord's replacement was not substantially young enough to create the inference of discrimination required by *O'Connor*. *See O'Connor*, 517 U.S. at 312, 116 S.Ct. 1307.

This court is not holding that in every instance an age difference of seven years is not enough to pass the "substantially younger" prong of the prima facie case for age discrimination. Rather, the fourth prong of the prima facie case is supposed to serve as an "indicator of age discrimination." *O'Connor*, 517 U.S. at 313, 116 S.Ct. 1307. This court finds that DeBord has not presented one iota of evidence that Lee or the School Board terminated DeBord "based on a[n] [illegal] discriminatory criterion." *See O'Connor*, 517 U.S. at 312, 116 S.Ct. 1307. Thus, the court must grant the Motion.

### *IV. Conclusion*

For the reasons discussed above, the court finds that DeBord has failed to establish a genuine issue of material fact with respect to her claim of discrimination under the ADEA. Therefore, the court GRANTS the School Board's Motion for Summary Judgment.

A final order will be entered in accordance with this opinion.