NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0125n.06

No. 14-3168

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 11, 2015
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| MARIA C. WALTHERR-WILLARD | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| MARIEMONT CITY SCHOOLS, | ) | SOUTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

Before: BATCHELDER and KETHLEDGE, Circuit Judges; COLLIER, District Judge.[*]

KETHLEDGE, Circuit Judge. Maria Waltherr-Willard is a 63-year-old schoolteacher who suffers from pedophobia, a debilitating fear of young children. She sued Mariemont City Schools for age discrimination, disability discrimination, hostile work environment, intentional infliction of emotional distress, and breach of contract. The district court dismissed her claim for breach of contract and granted summary judgment on the others. We affirm.

I.

For twenty years, Willard taught foreign languages at Mariemont High School. By all accounts, she was quite good at it. In 1997, Mariemont asked her to teach at the elementary school, but she said she could not do so because of her pedophobia. As proof, she provided a letter from her psychologist. Mariemont sent Willard to a psychiatrist for an independent

---

[*] The Honorable Curtis Collier, Judge of the United States District Court for the Eastern District of Tennessee, sitting by designation.

evaluation, which confirmed that her "mental state . . . would disable her from teaching [children under 12]." Consequently, Mariemont did not require her to teach at the elementary school.

For the next twelve years, Willard remained at the high school, where she taught all levels of French and the introductory course in Spanish. The other Spanish classes belonged to a different teacher, Carolina Timmerding. Eventually, Mariemont decided to move its French courses online, which meant that the high school no longer needed a French teacher.

The school district's superintendent, Paul Imhoff, met with the high-school principal, James Renner, to discuss what to do with Willard. Renner told Imhoff about Willard's pedophobia. Imhoff examined her personnel file, which indicated that she feared elementary-age children but not older students. So he decided to transfer her to the middle school. Willard did not object to the new assignment, and later expressed "enthusiasm" for teaching middle schoolers.

Around that same time, Imhoff was troubled to hear that Willard was telling parents that the high school would no longer offer any French instruction at all. On December 18, 2009, he asked her to attend a meeting, during which, she says, he screamed at her, told her that he would punish her for spreading rumors, and "lunged" across the table at her, though she admits that he did not touch her.

Willard began teaching at the middle school in September 2010. Six months later, she asked Imhoff to send her back to the high school, saying that her talents were "underutilized" at the middle school and that another year there would have "further detrimental impact on [her] health." Imhoff responded that "[t]here are currently no openings at Mariemont High School for the next year, but I will keep your request on file." Shortly thereafter, Willard retired.

In June 2012, Willard sued Mariemont under Ohio law for breach of contract and intentional infliction of emotional distress. She also brought an age-discrimination claim under the Age Discrimination in Employment Act, a disability-discrimination claim under the Americans with Disabilities Act, and a claim for hostile work environment under both acts. *See* 29 U.S.C. § 623(a)(1); 42 U.S.C. § 12112(a). The district court dismissed her breach of contract claim and granted summary judgment to Mariemont on all the others. This appeal followed.

II.

A.

We review de novo the district court's grant of summary judgment. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Summary judgment is proper if the record shows that there is no genuine issue as to any material fact. *Sjostrand v. Ohio State Univ.*, 750 F.3d 596, 599 (6th Cir. 2014). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004). Here, Willard argues that she presented enough evidence to create a genuine issue of material fact on four of her claims.

First, she argues that there was a genuine issue as to whether Mariemont violated the ADA by refusing to accommodate her pedophobia. The ADA requires an employer to accommodate a disabled employee, but it does not require unreasonable accommodations. *Burns v. Coca–Cola Enters., Inc.*, 222 F.3d 247, 256 (6th Cir. 2000). For example, an employer need not "create new jobs [or] displace existing employees." *Id.* at 257. Here, Willard asked Mariemont to accommodate her pedophobia by employing her at the high school as a full-time Spanish teacher. But the high school already had one of those and did not need another. Thus,

to accommodate Willard, Mariemont would have to create a new job at the high school or else displace the existing Spanish teacher, Timmerding. Willard's claim therefore fails.

Second, Willard argues that there was a genuine issue as to whether Mariemont discriminated against her because of her age. To show a prima facie case of age discrimination, a plaintiff must provide evidence that, among other things, her employer replaced her with a substantially younger employee or treated her differently than a substantially younger employee who was similarly situated. *Browning v. Dep't. of Army*, 436 F.3d 692, 695 (6th Cir. 2006).

Willard contends that Mariemont replaced her with a substantially younger teacher, Kelly Anders. For the purposes of the ADA, an employer "replaces" an employee when it "hire[s] or reassign[s]" another person to "perform [that employee's] duties." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). When Willard retired, Mariemont hired a teacher named David Price to perform her duties. When Price himself resigned a year later, Mariemont hired Anders to perform his duties. Thus, Price's replacement was Anders, but Willard's replacement was Price. Willard concedes that Price is not substantially younger than she is. And she points to no authority suggesting that she can satisfy her prima-facie burden by showing that her replacement's replacement—rather than her own replacement—was substantially younger. Thus, no reasonable juror could find that Mariemont replaced Willard with a substantially younger employee.

Willard also contends that Mariemont treated her differently than younger employees. Specifically, she says that Mariemont transferred her to the middle school but allowed younger Spanish teachers to remain at the high school. The only other Spanish teacher at the high school, however, was Timmerding, who was only two years younger than Willard. That age difference is not "substantial" for the purposes of the ADEA. *See Grosjean v. First Energy Corp.*, 349 F.3d

332, 336 (6th Cir. 2003). Thus, Willard provided no evidence that Mariemont treated her differently than substantially younger employees who were similarly situated. The district court did not err in granting summary judgment on her age-discrimination claim.

Third, Willard argues that a reasonable jury could find that Mariemont created a hostile work environment, that is, one "permeated with discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal quotations omitted). Willard brought this claim under the ADA and ADEA, so she must also show that any intimidation, ridicule and insult occurred because of her age or disability. *See id.* at 22. In support of her claim, Willard points to two pieces of evidence: a series of emails in which Mariemont employees made fun of her, and her own testimony about Imhoff's conduct during the meeting on December 18, 2009.

As for the emails, Willard undisputedly did not know about them before she retired. Thus, they do not show that her work environment was permeated with discriminatory intimidation, ridicule, and insult. Moreover, those emails do not mention her age or pedophobia. Hence they do not show that any hostility occurred because of her age or disability. As for the meeting with Imhoff, Willard does allege that he was hostile toward her during that meeting. But she admits that he never mentioned her age or disability, and she provides no evidence that those attributes motivated his hostility.

At most, Willard showed that her co-workers circulated unkind emails about her behind her back, and that her boss once yelled at her for reasons unrelated to her age or disability. On that evidence alone, a reasonable juror could not find for Willard on her claim for hostile work environment. Thus, the district court correctly granted summary judgment to Mariemont.

Fourth, Willard argues that there was a genuine issue as to whether Imhoff intentionally inflicted emotional distress upon her. She says he did so on two occasions: when he transferred her to the middle school, and when he yelled and lunged at her during the December 18 meeting. The question here is whether a reasonable juror could find that such conduct "was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community." *Burkes v. Stidham*, 668 N.E.2d 982, 988 (Ohio Ct. App. 1995). As for the decision to transfer Willard, Imhoff did not know that she feared teaching at the middle school, which means that his decision to transfer her there was not "extreme and outrageous." As for the incident on December 18, Willard alleges conduct that was surely unprofessional, but not "utterly intolerable in a civilized community." Hence this claim fails as well.

### B.

We also review de novo the district court's dismissal of Willard's claim for breach of contract. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). To allege a breach of contract, a plaintiff must first allege that there was, in fact, a contract. Under Ohio law, a contract with a governmental entity must be ratified by its governing body. *See Wright v. City of Dayton*, 814 N.E.2d 514, 520 (Ohio Ct. App. 2004). Here, Willard contends that her correspondence with several unidentified school officials created a contract that required Mariemont to keep her at the high school. But the Mariemont School Board undisputedly never ratified such a contract, which means for our purposes that there was not one. *Id.* Thus, the district court correctly dismissed Willard's claim.

The district court's judgment is affirmed.