NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0203n.06

No. 21-3773

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
May 19, 2022
DEBORAH S. HUNT, Clerk

KATHERINE MERHULIK,

    Plaintiff-Appellant,

v.

WELTMAN, WEINBERG & REIS CO. LPA,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

Before: SILER, CLAY, and MURPHY, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff Katherine Merhulik appeals the district court's order granting summary judgment for Defendant Weltman, Weinberg & Reis Co. ("Weltman") in this action asserting violations of federal and state anti-discrimination and anti-retaliation laws under the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1), (d) ("ADEA") and Ohio's state law corollary, Ohio Rev. Code Ann. §§ 4112.02(I), .14. For the reasons set forth below, this Court **AFFIRMS**.

## I. BACKGROUND

On July 13, 2009, at the age of fifty-two, Plaintiff Katherine Merhulik, now known as Katherine Leeds, began employment at Defendant Weltman, a law firm, as a legal collector. Within a year of employment, Merhulik was transferred from the downtown Cleveland office to the Brooklyn Heights office. With that office change, the scope of her job duties also shifted; she began to focus on the Ohio Attorney General's portfolio, which included complicated student loans

and tax collections. Management of this portfolio proved onerous for Merhulik. While Merhulik sometimes met the monthly collections expectations, measured by calls made and revenue collected, she more often struggled to meet the departmental quantitative goals.

On February 9, 2010, her supervisor at Weltman issued Plaintiff a documented verbal warning for unsatisfactory job performance for failure to achieve monthly goals for November 2009, December 2009, and January 2010 and placed her on a performance improvement plan. Another verbal warning came on June 1, 2011, when Merhulik failed to follow the applicable procedures required to comply with federal law, which resulted in an unauthorized payment being deducted from an individual's bank account. On July 6, 2011, Merhulik received a written warning for poor performance for failing to meet goals for the prior six months and a low three-month collections average. Another verbal warning for performance came on June 8, 2012, instructing Merhulik to increase the percentage of her collections goal for the following month. This Merhulik failed to do, as she achieved only 75.40% of her collections goal, falling short of the expected range of 85–90% of debts collected. As a result, Weltman issued a written warning to Plaintiff on July 3, 2012.

Her annual performance evaluations summarized these shortcomings. In her first written performance review on February 25, 2010, Merhulik received a rating of two out of a possible five on the "productivity" and "monthly quotas" categories, which correlated with a rating of "did not meet the standard." Her 2010 mid-year evaluation led to placement on a performance improvement plan. More of the same came in Plaintiff's July 2011 annual review, in which she again received a two of five in the productivity category. It noted she "has had challenges with meeting her goal requirements recently" and that she has struggled with communication and with "handling high-stress situations[.]" (July 31, 2011 Performance Evaluation, R. 35-3, PageID #

451). Her last annual review as a Weltman collector came in August 2012. In that evaluation, Merhulik received a rating of two in the "job knowledge, skills & abilities" section because, per her supervisor, "Kathy struggles to use the knowledge and training that she has been given to effectively complete her job. She struggles to bring her route current[,] which ultimately affects her performance." (Aug. Evaluation, R. 35-3, PageID # 456). Defendant again placed Plaintiff on a performance improvement plan.

In late 2012, Defendant posted an opening for a position called Quality Assurance Call Monitor in the Collections Strategy Services Department. Merhulik decided to apply, and, on November 24, 2012, she assumed that position. Plaintiff characterizes this job change as a promotion; Defendant points out, however, that the job change occurred because Merhulik applied to and obtained an open position. Most importantly, for present purposes, once Plaintiff moved out of the collector position in November 2012, that marked the last time she ever worked as a collector, whether for Defendant or any other organization. Merhulik's new role at Weltman proved more apt for her, and she met or exceeded all job expectations in her 2014 and 2015 performance evaluations.

Plaintiff's employment at Weltman ended on September 1, 2016, when Merhulik, then age fifty-nine, had her position eliminated in a company-wide reduction in force. Sixteen of the twenty-three terminated employees, including Merhulik, were over the age of forty. Plaintiff's job duties were distributed to the remaining employees in the department, who were ages forty-four, forty-nine, and fifty.

On November 2, 2017, Weltman posted a job opening for a collector position listed as Job Requisition Number 2547 ("First Posting"). Merhulik, then age sixty and no longer employed at Weltman, applied by submitting a resume and answering pre-screen questions. Thirty-three

applicants responded to the First Posting, but Weltman ultimately withdrew the posting and did not hire anyone to fill it. However, Weltman interviewed one candidate and extended that person an offer, but it later rescinded the offer and removed the posting after the candidate failed a background check.

On January 2, 2018, the firm listed a new posting for a Collections Specialist position designated Job Requisition Number 2569 ("Second Posting"). "The entry[-]level collector position is one of the lower-level, higher turnover positions, similar to a clerical position." (Pl.'s Resp., R. 41, PageID # 1558). The resume Plaintiff submitted to the First Posting and the Second Posting showed she had no work experience between her September 2016 separation from Weltman and her January 2018 application. Plaintiff did not receive a phone interview and was not selected for the position in the Second Posting. Defendant says that it did not select Merhulik for a phone interview after determining that her prior work experience at Weltman showed that she was not a good candidate. Ultimately, Weltman hired a different applicant for the Collections Specialist position ("chosen candidate").

**Procedural History**

On February 27, 2017, Plaintiff filed suit against Defendant in the Cuyahoga County Court of Common Pleas, alleging that Weltman terminated her based on her age when it included her in the September 2016 reduction in force. Plaintiff also alleged that Weltman's reduction in force had a disparate impact on older employees. The case proceeded through discovery, but Plaintiff dismissed the case without prejudice in October 2018 before the court could rule on Weltman's motion for summary judgment. Plaintiff refiled in October 2019 in the same state court. On February 24, 2021, that court entered summary judgment in favor of Defendant on all of Plaintiff's

claims and dismissed the case in its entirety, with prejudice. The Eighth District Court of Appeals affirmed that decision.

On October 28, 2018, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") regarding Weltman's decision not to hire her for the Second Posting. The EEOC investigated the allegations of age discrimination and retaliation but dismissed the claims on March 3, 2020, concluding:

> Evidence reveals that [Merhulik] w[as] not hired for the Collections Specialist position because of numerous performance reprimands [Merhulik] received when [she was] previously employed by [Weltman] as a Collector. There is insufficient evidence to show that [she] w[as] denied because of [her] age or in retaliation for engaging in a protected activity.

(EEOC Letter, R. 35-3, PageID # 465).

On May 29, 2020, Plaintiff filed the instant action in federal district court. Merhulik set forth a seven-count complaint under the ADEA, Ohio's state equivalent, and Title VII of the Civil Rights Act of 1964. On August 13, 2020, Defendant filed a Rule 12(b)(6) motion to dismiss Count Two (unlawful use of hiring criteria in violation of the ADEA); Count Four (unlawful retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a)); and Counts Five and Six (age discrimination under Ohio Rev. Code Ann. §§ 4112.02, .99), for failure to state a claim upon which relief can be granted. The district court granted this motion in part, dismissing Counts Two, Four, and Six. Count Five was left undisturbed and joined the then-unchallenged counts, specifically: Count One (disparate treatment age discrimination in violation of the ADEA); Count Three (unlawful retaliation in violation of the ADEA); and Count Seven (retaliation under Ohio Rev. Code Ann. §§ 4112.02(I), .99).

Defendant Weltman then sought summary judgment to dismiss Plaintiff's case in full. Plaintiff filed an initial response in opposition, accompanied by a motion for additional discovery

and a request to file a supplemental response following further discovery. The district court ordered limited additional discovery and permitted supplemental briefing. In its review of the supplemental response and reply, the district court granted Defendant's motion for summary judgment. Plaintiff's timely appeal followed.

## II. DISCUSSION

### A. Standard of Review

We review the district court's grant of summary judgment *de novo*. *Sloat v. Hewlett-Packard Enter. Co.*, 18 F.4th 204, 209 (6th Cir. 2021). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Conversely, "[s]ummary judgment is inappropriate when the evidence raises a genuine issue about a material fact, 'that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). We "view all evidence in the light most favorable to the nonmoving party." *Id.* (citing another source). A district court's decision regarding the scope of discovery is reviewed under an abuse of discretion standard. *B & H Med., LLC v. ABP Admin., Inc.*, 526 F.3d 257, 268 (6th Cir. 2008).

### B. Analysis

On appeal, Plaintiff lodges three challenges to the district court's opinion. She alleges the district court erred in failing to find that Weltman's decision not to hire her as a Collections Specialist under the First and Second Job Postings was because of unlawful age discrimination or in retaliation for her filing suit in the Court of Common Pleas. She also contends that the district

court should have drawn an adverse inference against Defendant Weltman. Each argument is reviewed below, seriatim.

### 1. Age Discrimination

The ADEA prohibits an employer from "fail[ing] or refus[ing] to hire . . . any individual or otherwise discriminat[ing] against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). Section 4112.14(A) of the Ohio Revised Code provides: "No employer shall discriminate in any job opening against any applicant . . . aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job[.]" Age discrimination claims under the Ohio statute are assessed under the same standards as federal claims brought under the ADEA. *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005). The burden of persuasion is on the plaintiff to show that "age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009).

In Counts One and Five of Plaintiff's complaint, Merhulik alleges that through its failure to hire her, Defendant Weltman discriminated against her based on age in violation of the ADEA and Ohio law. Because Merhulik relies on circumstantial evidence, not direct evidence, of age discrimination, this Court evaluates her claim under the three-step burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that familiar framework, a plaintiff must show that she: (1) was at least forty years old at the time of the alleged discrimination; (2) faced an adverse employment action; (3) was otherwise qualified for the position; and (4) was refused hire in preference of a significantly younger individual. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003); *McDonnell Douglas*, 411 U.S. at 802.

If a plaintiff makes out a prima facie case, the burden shifts to the employer to proffer a legitimate, non-discriminatory reason for the adverse employment action. If the employer carries

that burden, the burden shifts back to the plaintiff to establish that the employer's reason was a pretext for discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). To demonstrate pretext, a party must show that the stated reason for the adverse action: (1) had no basis in fact; (2) was not the actual reason; or (3) was insufficient to explain it. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 545 (6th Cir. 2008). "[A] reason cannot . . . be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)). Thus, regardless of which rebuttal method a plaintiff uses, "[s]he always bears the burden of producing sufficient evidence from which the jury could reasonably reject the defendant's explanation and infer that the defendant intentionally discriminated against [her]." *Id.* (citation and internal quotation marks omitted).

In this case, Plaintiff argues Weltman discriminated against her based on age when it refused to hire her as a Collections Specialist under the First and Second Job Postings.

To start, we assess Plaintiff's arguments related to the First Posting. The district court correctly found that Plaintiff could not demonstrate a prima facie case of discrimination in connection with her application for this posting. There is no evidence that Merhulik was considered for and denied the position or that a substantially younger person was chosen instead. In fact, that position went unfilled because Weltman withdrew the job posting. Regardless of why the First Posting was pulled, be it because of evolving staffing needs or because the one interviewed candidate failed the background check, it makes no difference since the circumstances wholly lack anything to support an inference of discrimination. Given that Defendant pulled the job listing, Merhulik cannot demonstrate that she was refused hired in preference of a substantially younger person, which is the hallmark of ADEA discrimination claims. The district court properly found

that Merhulik could not establish a prima facie case of discrimination in connection to Plaintiff's application for the First Posting.

Plaintiff's assertions concerning the Second Posting fare better at the outset but meet the same fate as the foregoing age discrimination claim. Assuming, as the district court did, for purposes of argument, that Merhulik established a prima facie case of discrimination, she has not shown that Weltman's stated reason for its failure to hire "was pretext and that age was the real reason" for it. *Geiger v. Tower Auto.*, 579 F.3d 614, 626 (6th Cir. 2009). In the hopes of showing pretext, Merhulik contends she was more qualified for the position than the chosen candidate, thereby supporting an inference of age discrimination. She makes three sub-arguments, all of which fail.

For one, to show that a plaintiff is qualified, "[she] must prove that [s]he was performing h[er] job at a level which met h[er] employer's legitimate expectations." *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990) (internal quotation marks and citation omitted). Although Plaintiff goes to great lengths to argue that she met the minimum job requirements of the entry-level position, accepting the bare minimum is not the legal standard for pretext. *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 245 (6th Cir. 2005) ("[I]t was reasonable for CMHA to conclude that while White was minimally qualified, her qualifications did not rise to the level of quality . . . for which CMHA was searching[.]"). The record shows that Merhulik received five corrective actions for unsatisfactory performance. Periods of improvement were often bookended with less-than-satisfactory work. Her time at Weltman fell short of Defendant's objective expectations of her employment, so when Merhulik re-applied years after her separation from Weltman, her previous poor performance was not somehow transfigured into sterling credentials. *See McDonald*, 898 F.2d at 1160 ("McDonald was simply not performing to Union

Camp's satisfaction."). Given her prior performance, Plaintiff has not demonstrated that Defendant's proffered reason for its failure to hire her hid a discriminatory motive.

What is more, Merhulik cannot present any evidence that would gainsay Weltman's contention that the chosen candidate had more recent and relevant experience in collections. The chosen candidate had over three years of experience in complex collections, outpacing Merhulik's less complex and more outdated work. Merhulik's time in collections ended in 2012, whereas the chosen candidate had more than three years of recent experience in complex collections. The fact that Merhulik had more years of collections experience than the chosen candidate does not require submitting her claims to a jury. This Court has long held, "[s]o long as its reasons are not discriminatory, an employer is free to choose among qualified candidates[]" when making hiring decisions. *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987) (citations omitted).

Merhulik's last argument concerning the Second Posting is that she was more qualified than the chosen candidate because the chosen candidate was subject to a non-compete and had previously been terminated for sexual harassment. Yet, as Plaintiff acknowledges, Weltman did not know that the chosen candidate had these potentially disqualifying factors in her background before hiring her. Weltman has demonstrated that it hired whom it believed to be the best-qualified candidate at the time of hiring. Even with a prima facie case supposedly made out, Merhulik is unable to prove that Defendant's articulated, non-discriminatory justification for choosing a different candidate was pretextual. In sum, the district court did not err in finding Weltman was entitled to judgment in its favor on Plaintiff's age discrimination claims.

## 2. Retaliation

The ADEA and Ohio state law prohibit retaliation against private sector employees who complain of age discrimination. 29 U.S.C. § 623(d); Ohio Rev. Code Ann. § 4112.01(I). A prima

facie case of retaliation under the ADEA and Ohio's age discrimination statute requires a plaintiff to prove: (1) she engaged in a protected activity; (2) the defending party was aware of the activity; (3) the defending party took adverse employment action against the employee; and (4) there is a causal connection between the protected activity and adverse action. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 288 (6th Cir. 2012); *Greer-Burger v. Temesi*, 879 N.E.2d 174, 180 (Ohio 2007). As with age discrimination claims, if a plaintiff establishes a prima facie case and the employer articulates a legitimate, non-retaliatory reason for the materially adverse action, the plaintiff must then show that the employer's proffered reasons for taking the adverse action were a pretext for prohibited retaliatory conduct.

The protected activity in question in Merhulik's case is the filing of a lawsuit against Weltman in state court, which was generally contemporaneous with her application to the Second Job Posting. We begin, as the district court did, with the assumption that Plaintiff has shown a prima facie case. Although her ability to make out such a prima facie case is doubtful on the causation prong, Plaintiff nevertheless would be unable to show that Weltman's decision not to hire her constituted pretextual retaliation. As discussed previously, Defendant demonstrated a legitimate, non-retaliatory reason for not hiring Merhulik, namely, her difficulties meeting collection goals and her lack of recent collection experience. Merhulik offered no evidence demonstrating pretext, let alone that retaliation was the but-for cause of the adverse hiring decision. Therefore, the district court did not err in finding that Plaintiff failed to carry her ultimate burden of persuasion on the issue of retaliation such that a jury could find in her favor.

### 3. Adverse Inference

Finally, Plaintiff submits that the district court should have drawn an adverse inference against Weltman for failing to produce all ordered discovery, including: (1) specific interview data

for the First and Second Job Posting; (2) interview notes and the complete interview guide for the interviewed candidate for the First Posting, and the chosen candidate for the Second Posting; (3) identification of the candidates who applied for the First and Second Job Postings; and (4) analytics data for the First and Second Job Posting maintained by Indeed.com. The general rule is that "[w]here relevant information . . . is in the possession of one party and not provided, then an adverse inference may be drawn that such information would be harmful to the party who fails to provide it." *McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627, 632 (6th Cir. 2000) (internal quotation marks and citation omitted).

A review of the parties' discovery disputes at the district court is helpful in connection with Plaintiff's argument that the district court should have drawn an adverse inference against Weltman. After Defendant filed its motion for summary judgment, Plaintiff asked the district court to order that Weltman produce additional discovery allegedly needed before Merhulik could respond to the defense motion; the district court ordered Merhulik to clarify which items she sought, noting "[i]t is unclear . . . whether any necessary discovery remains outstanding," and "a number of items [requested] may or may not exist." (Order, R. 50, PageID # 2089). Plaintiff then filed a list of thirty-six items, and the district court ordered Weltman to provide any responsive information within ten days. Defendant did so. For example, Weltman provided the dates on which job candidates submitted a resume for the First Posting, the outcome of their application, and whether they were interviewed by telephone or in-person. However, Defendant explained that several of the requested items were not responsive and thus fell outside of the scope of the district court's order. Other information, such as the Indeed.com analytics, did not exist or was not otherwise in Defendant's possession.

This Court now turns to the final question on appeal, i.e., whether the district court should have drawn an adverse inference against Defendant for failing to produce necessary discovery. The record demonstrates that Defendant complied with its discovery obligations and that an adverse inference was not warranted. In the absence of proof that unproduced discovery materials were destroyed, spoiled, or withheld in bad faith, Merhulik's argument that the district court erred by failing to draw an adverse inference must be denied. *See Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991).

An adverse inference is not warranted for another, more fundamental reason. Such an inference is used to forgive a plaintiff's inability to establish a prima facie case due to a defendant's intransigence. *Clay v. United Parcel Serv.*, 501 F.3d 695, 716 (6th Cir. 2007). Plaintiff has not shown that any of the documentation referenced above would create a genuine issue of material fact or prove a required element of her claims. *Automated Sols. Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 514 (6th Cir. 2014) (citation omitted) ("[T]he party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction."). In sum, Plaintiff has not shown that Defendant failed to provide responsive documentation or that it withheld such information in bad faith. She also has not demonstrated that her efforts to establish a prima facie case or issues of material fact were hampered by Defendant's alleged failure to timely and fully produce discovery. Given that the district court ordered Defendant to provide additional discovery, coupled with Merhulik's difficulty on appeal identifying what missing evidence is required to make out her claims, the district court did not err by failing to draw an adverse inference against Defendant.

## III.  CONCLUSION

For the reasons set forth above, this Court **AFFIRMS** the judgment of the district court.